[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16969

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 18, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-60706

BIZROCKET.COM, INC.,
f.k.a. Home Care America, Inc.,

Plaintiff-Appellant-
Cross-Appellee,

versus

INTERLAND, INC.,
f.k.a. Micron Electronics, Inc.,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court
for the District of the Southern District of Florida

_____

**(April 18, 2008)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

In this diversity case,[1] Bizrocket.com, Inc. ("Bizrocket") claimed that Interland, Inc. ("Interland") breached a contract by denying it physical access to a computer server stored at Interland's web-hosting facility. Bizrocket also claimed that by denying it access to the server, Interland converted the server and the software on it in violation of Florida tort law. The district court granted Interland's motion for summary judgment on the conversion claim, and a jury awarded Bizrocket $800,000 in damages on the breach of contract claim. Ruling on Interland's renewed motion for judgment as a matter of law,[2] the court granted the motion in part and reduced Bizrocket's damages to one dollar. Both parties appeal. We affirm the court's judgment on Bizrocket's conversion claim and reverse its denial in part on Interland's motion for judgment as a matter of law.[3]

## I.

## A.

The material facts underlying Bizrocket's breach of contract and conversion

----

[1] See 28 U.S.C. § 1332.

[2] See Fed. R. Civ. P. 50(b).

[3] In addition to cross-appealing the district court's partial denial of its motion for judgment as a matter of law, Interland cross-appeals the district court's refusal to impose sanctions under Fed. R. Civ. P. 11, which Interland argues are justified on the ground that the damages theory Bizrocket advanced in support of its breach of contract claim had no basis in law. We affirm the court's sanctions ruling without elaboration.

claims are essentially uncontested.[4]  In 1996, Mark Ismach founded Bios Corp. ("Bios").  He was Bios's sole shareholder, and served as the company's president. Over the next couple of years, he created software for a search engine, called Business Ethic Bureau Investigation ("BEBI"), and stored a copy of it on a server.

On September 29, 1998, Ismach, either on behalf of himself, Bios, or both, signed a Co-Party Agreement with Interland, a Minnesota corporation.[5]  This web-hosting agreement provided that, in exchange for a monthly fee, Interland would store the server, designated Server 9007, and provide it with "ping, power, and pipe," or electricity, bandwidth, and internet connectivity.

On April 26, 1999, Home Care America ("HCA"), a Florida corporation, bought all of Ismach's shares in Bios for $500,000 plus a majority of the shares of HCA stock.  HCA changed its name to Bizrocket and Bios became its wholly-owned subsidiary.  As part of the deal, Ismach remained president of Bios; he also served as president of Bizrocket.  Robert Williams, the founder and president of

---

[4]  For the most part, we recite the facts as they appear in Bizrocket's opening brief which are drawn from the parties' Revised Joint Neutral Statement of the Case to the jury.

[5]  Interland is the successor-in-interest to WorldWide Internet Publishing Corporation, with whom Bios contracted.  Interland assumed WorldWide's obligations to Bios under the Co-Party Agreement.

HCA, became a vice president of Bizrocket.[6]

Ismach soon discovered that Bizrocket had numerous undisclosed liabilities, and on October 22, 1999, he resigned as president of Bizrocket.[7] Williams replaced him as Bizrocket's president.

In late November, Williams contacted Interland on behalf of Bizrocket, and demanded that Interland allow Bizrocket access to Server 9007, deny access to anyone else, and disconnect the server from the internet. Williams gave Interland a copy of Ismach's letter of resignation as Bizrocket's president as proof of his, Williams's, authority to speak for Bizrocket. Interland contacted Mark Ismach and asked him about Williams's request. Ismach told Interland that he was the sole owner of Server 9007, and he instructed Interland to deny Williams and Bizrocket access to the server and to keep the server online. Interland did so, and rebuffed Williams's continued pleas for access. At some point, Interland and Ismach terminated the original Co-Party Agreement between Bios and Interland, and Interland entered into a new web-hosting agreement with Mark Ismach for the server's storage and maintenance.

In December, 1999, Bizrocket sued Mark Ismach for physical access to

----

[6] The record does not indicate the identities of any of the members of the board of directors of Bios and Bizrocket, respectively, at any time material to this law suit.

[7] Ismach remained Bizrocket's majority shareholder.

Server 9007. In July, 2000, they reached a settlement whereby, for $10,000 and a release of all claims, Ismach agreed to instruct Interland to give Bizrocket physical access to Server 9007 in November 2000. When Bizrocket inspected the server in December 2000, the BEBI software was gone.

B.

On July 24, 2003, Bizrocket sued Interland (and two other corporations, one of them based in Florida) in a Florida circuit court for conversion of Server 9007 and the BEBI software, and for breach of Bios's Co-Party Agreement with Interland. After the Florida-based defendant was dismissed from the case, Interland removed the case to the United States Court for the Southern District of Florida.

On Interland's motion for summary judgment, the district court ruled that Florida's "economic loss rule" barred Bizrocket's conversion claim.[8] The court set the breach of the Co-Party Agreement for trial, and on September 2, 2005, a jury found that Interland breached the agreement by denying Bizrocket physical access to the server, and awarded Bizrocket $800,000 in "reliance" damages.[9]

---

[8] The court made that ruling without considering who owned Server 9007 – Bios or Ismach or Bizrocket.

[9] This damages figure was made up of the $500,000 Bizrocket paid Ismach for his Bios stock and $300,000 Bizrocket spent operating Bios.

In a renewed motion for judgment as a matter of law, Interland argued that no reasonable jury could have found: (1) that it had breached the Co-Party Agreement; or (2) that $800,000 in "reliance" damages was reasonably foreseeable to the contracting parties, Bios and Interland, at the time they entered into the Co-Party Agreement. The court rejected Interland's first argument, but was persuaded by its second argument. It therefore granted Interland's motion in part, and reduced the jury award to one dollar for nominal damages.

## II.

At the time Interland denied Bizrocket access to Server 9007 – and the conversion and breach of contract claims thereby arose – the following is clear: (1) Ismach owned the majority of Bizrocket's shares; (2) Bizrocket owned all of Bios's shares; (3) Ismach was Bios's president; (4) Williams was Bizrocket's president; and (5) either Ismach or Bios, or both, owned Server 9007 and the BEBI software. With these facts in hand, we turn to Bizrocket's claims, beginning with the conversion claim.

### A.

Whether the economic loss rule barred the conversion claim is irrelevant,

because Bizrocket failed to make out a case of conversion. In its complaint,[10] Bizrocket asserted that "as a result of Bizrocket's purchase of all Bios stock, it became the owner of BEBI, the server that housed BEBI, and all proprietary information related thereto." Assuming Server 9007 and the BEBI software belonged to Bios and not Ismach personally at the time HCA, Bizrocket's predecessor, purchased Ismach's Bios shares, HCA did not acquire the server and software; instead, they remained the property of Bios. It therefore follows that Interland could not have infringed Bizrocket's rights in the property when it denied Bizrocket access.

B.

We dispose of Bizrocket's breach of contract claim for the same reason. The Co-Party Agreement was between Bios and Interland. Bizrocket's purchase of Ismach's shares of Bios did not operate to assign Bios's rights under the contract to Bizrocket. Bizrocket's sole interest in the contract was due to its ownership of Bios' shares. Bizrocket cites no precedent, from Florida or elsewhere, for the proposition that the sole shareholder of a corporation becomes a party to the corporation's contracts with third parties by operation of law the

---

[10] We refer to Bizrocket's first amended complaint, the complaint before us in this appeal.

moment it acquires ownership of the corporation's shares.  Bizrocket's breach of contract claim therefore fails, and the district court erred in denying Interland's motion for judgment as a matter of law.

The judgment of the district court granting Interland judgment on Bizrocket's conversion claim is AFFIRMED.  The court's judgment for Bizrocket (for one dollar) on its breach of contract claim is REVERSED, and the case is REMANDED with instructions that the court enter judgment for Interland on that claim.

AFFIRMED, in part; REVERSED, in part, and REMANDED.